**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**CHRISTOPHER MACKEY**                                                                 **PLAINTIFF**

**v.**                                   **Case No. 4:24-cv-00350-KGB**

**CITY OF PINE BLUFF**                                                                 **DEFENDANT**

**OPINION AND ORDER**

Plaintiff Christopher Mackey brings claims against his former employer defendant City of Pine Bluff ("Pine Bluff") alleging that Pine Bluff violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*., the Arkansas Civil Rights Act ("ACRA"), Arkansas Code Annotated § 16-123-101, *et seq.*, and Arkansas Code. Annotated § 11-9107 for engaging in Workers' Compensation retaliation (Dkt. No. 1). Before the Court is Pine Bluff's motion for summary judgment (Dkt. No. 13). Mackey responded to the motion for summary judgment (Dkt. No. 17). Pine Bluff filed a reply (Dkt. No. 21). For the following reasons, the Court grants, in part, the motion for summary judgment (Dkt. No. 13).

**I.      Factual Background**

As required by Federal Rule of Civil Procedure 56 and Local Rules 56.1 and 7.2, Pine Bluff submitted a statement of fact in support of its motion for summary judgment (Dkt. No. 15). Mackey responded to Pine Bluff's statements of fact (Dkt. No. 16). The Court recounts the facts from Pine Bluff's statement of facts and Mackey's response to that statement of facts. As required by Federal Rule of Civil Procedure 56(c), any denial of fact must be supported with relevant, admissible evidence in the record before the Court. *See* Fed. R. Civ. P. 56(e)(2) ("If a party fails to [support] properly an assertion of fact or fails to [address] properly another party's assertion of

fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion").

On March 2, 2011, Mackey began working with Pine Bluff Fire and Emergency Services ("PBFES") as a firefighter (Dkt. No. 16, ¶ 1).  According to Pine Bluff's job description, some of the essential functions of a basic firefighter are to fight structure, vehicle, and wild land fires and work on fire prevention efforts at all times (*Id.*, ¶ 2).  On January 10, 2016, Mackey was promoted to the position of engineer (*Id.*, ¶ 3).  An engineer is second in command of the engine and is responsible for driving the engine and responding to emergencies (*Id.*, ¶ 4).

According to Pine Bluff's job description, the position of engineer is highly physical, and "the employee is frequently required to stand, walk, sit, use hands to finger, handle, or feel, reach with hands and arms, climb or balance, stoop, kneel, crouch, or crawl," and "must occasionally lift and/or move more than 100 pounds; frequently lift and/or move up to 50 pounds." (*Id.*, ¶ 5).  Pine Bluff claims that "some" of the essential functions of an engineer are to serve as a first responder, Haz-mat technician, and EMT as needed (*Id.*, ¶ 6).  Mackey disputes this characterization, claiming that one of the ten essential duties and functions of an engineer is to serve as a first responder, Haz-mat technician, or EMT as needed but that the other nine functions do not relate to participating in active firefighting (*Id.*).  However, Mackey does not dispute that at least one of the essential duties is to serve as a first responder, Haz-mat technician, or EMT as needed (*Id.*).  The physical requirements of engineers and firefighters are identical, besides the fact that firefighters "must occasionally lift and/or move more than 100 pounds; regularly lift and/or move up to 100 pounds" in addition to more specific vision requirements (*Id.*, ¶ 7).

On July 31, 2022, Mackey suffered an ankle injury as his shift began by stepping into a pothole in the parking lot of Station 1 in Pine Bluff (*Id.*, ¶ 8).  Mackey informed his battalion chief

of this incident and said he would try to work the shift, but the pain continued to get worse (*Id.*). The next morning, Mackey saw Dr. Roy Burrell at Jefferson Regional Medical Center ("JRMC"), where Mackey was informed his injury was a chronic sprain (*Id.*, ¶ 9). Mackey returned to JRMC on August 9, 2022, for a Workers' Compensation visit (*Id.*, ¶ 10). On September 6, 2022, Mackey was referred to Dr. Michael Weber with OrthoArkansas in Little Rock (*Id.*, ¶ 11).

The Workers' Compensation carrier accepted Mackey's claim as compensable and paid for all of his medical treatment for his ankle injury (*Id.*, ¶ 12). Mackey's Workers' Compensation claim was handled through the Arkansas Municipal League Workers' Compensation Trust ("MLWCT") (*Id.*, ¶ 13).

Between his initial doctor's visit with Dr. Burrell and his referral to OrthoArkansas, Mackey continued to work at PBFES in an active firefighting capacity (*Id.*, ¶ 14). Mackey was cleared to continue working following his visit at OrthoArkansas by Dr. Weber (*Id.*, ¶ 15). On September 19, 2022, Mackey received an MRI on his right ankle (*Id.*, ¶ 16). On September 29, 2022, Mackey attended a follow up appointment with Dr. Weber who reviewed the MRI and diagnosed Mackey with a "complete rupture of the peroneus brevis tendon" in his right ankle and referred Mackey to Dr. Gregory Ardoin (*Id.*, ¶ 17). On November 4, 2022, Mackey saw Dr. Ardoin, who recommended surgery on his injured ankle (*Id.*, ¶ 18). Mackey was able to work up until the day of his surgery in a brace prescribed by Dr. Ardoin (*Id.*, ¶ 19).

In his deposition, Mackey claimed that he requested a light duty job as early as January 4, 2023, in which he texted Captain Russell Carothers who responded that he would talk to Chief Shauwn Howell and get back to Mackey (*Id.*, ¶ 20). Carothers never got back to Mackey (*Id.*, ¶ 21).

On January 6, 2023, Mackey received surgery on his right ankle (*Id.*, ¶ 22).  Mackey began receiving Workers' Compensation benefits 14 days after the surgery and eventually received back pay for the first 14 days (*Id.*, ¶ 23).  On March 1, 2023, Mackey was informed by APRN Melissa Hulett that he could return to light duty, mainly sit-down work, but not active firefighting (*Id.*, ¶ 24).

After his surgery, Mackey submitted work releases to his battalion chief and requested a light duty job (*Id.*, ¶ 25).  Specifically, Mackey requested to be an instructor for the department's in-house EMT training but was informed by his battalion chief that the department did not offer light duty work (*Id.*).  Mackey disputes the department's response to the requests and the truthfulness of the battalion chief's response, asserting that the PBFES did offer light duty (*Id.*).

The EMT training, which was scheduled to begin in either February or March 2023, ended up being taught by Lieutenant Joseph Kisel (*Id.*, ¶ 26).  Lieutenant Kisel has no physical limitations and is able to perform the functions of a firefighter, such as responding to calls, even though he does not (*Id.*, ¶ 27).

According to Pine Bluff's job description, in the course of performing the essential functions of the assistant trainer position, the individual is "regularly required to stand, walk, . . . climb or balance, stoop, kneel, crouch, or crawl." (*Id.*, ¶ 29 (quoting Dkt. No. 15-13, at 4)). In addition, an individual in the assistant training position "must occasionally lift and/or move more than 100 pounds; [and] regularly lift and/or move up to 100 pounds." (*Id.*, ¶ 29 (quoting Dkt. No. 15-13, at 4)).  Besides requesting to be in training, Mackey asked Howell if he could be allowed to continue as "an engineer but without the firefighting—without having to be inside fighting the fire." (*Id.*, ¶ 30 (quoting Dkt. No. 15-1, at 45–46)).  Howell responded that that was not an option, "[t]hat if [Plaintiff] was going to be on the engine, [Plaintiff] had to be able to fight fire." (*Id.*, ¶

4

30 (quoting Dkt. No. 15-1, at 45–46)).  Some of the essential functions of an engineer are to serve as a first responder, Haz-mat technician, and EMT as needed (*Id.*, ¶ 31).[1]

Mackey claims multiple employees, including him for a previous injury, were allowed to be placed in temporary light duty positions prior to his current injury (*Id.*, ¶ 32).  Mackey's prior injury did not require surgery, only a couple of shots in his shoulder and an MRI (*Id.*, ¶ 33).[2]

According to PBFES's Policies, Procedures, and Guidelines, "[e]mployees who are temporarily unable to perform their full duties, but who are expected to be able to return to full duty status, may be eligible for placement in a modified duty assignment." (*Id.*, ¶ 34 (quoting Dkt. No. 15-14, at 1)).  However, the policy also states that, "[a]pplication for Modified Duty must be made in writing, which must include or have attached an attending physician's signed statement, which states the disability is temporary." (Dkt. No. 16, ¶ 35 (quoting Dkt. No. 15-14, at 1)).  Mackey admits that Roosevelt Monk, Trey Caruthis, and Nick Clark had to retire because they could not fulfill their duty as firefighters (Dkt. No. 16, ¶ 37).

According to Howell, every uniformed employee of PBFES must be able to perform the essential functions of a basic firefighter (*Id.*, ¶ 38).  Additionally, every uniformed employee with the department is encouraged to pass annual Emergency Response Simulation Training ("ERST") (*Id.*, ¶ 39).  ERST requires employees to wear full fire protection gear while they:  (1) drag 100 feet of hose 100 feet; (2) straight roll and unroll 50 feet of hose; (3) erect a 14 foot ladder, raise it to the second floor window of a training tower, and then climb it, touching the top rung and returning to the bottom and resecuring it; (4) stand on a platform and strike a 160 pound block and

---

[1]  Plaintiff admits that one essential function of an engineer is to act as a first responder, Haz-mat technician, or EMT as needed (Dkt No. 16, ¶ 31).  Plaintiff denies this fact but includes a similar caveat to the denial (*Id.*, ¶ 6).

[2]  Mackey admits to these facts but contests the relevance of the facts to the case.

drive it five feet using an eight-pound hammer; (5) crawl through a simulated attic two feet by two feet by ten feet long; (6) carry a 50 foot rolled section of hose of four flights of stairs; (7) pull fifty feet of hose up to the fifth floor of the training tower, pick up the 50 foot rolled section that was carried up, and return it downstairs; and (8) carry or drag a 130 pound rescue dummy 100 feet (*Id.*, ¶ 40). ERST has time limits that vary depending on the employee's age. At the time Mackey was injured he was 48 years old; therefore under department guidelines, he was required to complete the ERST in 14 minutes (*Id.*, ¶ 41). Additionally, after those tasks are completed and the employee is given a ten-minute rest period, the employee must climb the aerial ladder 75 feet (*Id.*, ¶ 42).

Mackey described the permanent disability with his right ankle by stating that he cannot feel the right side of his foot, and there are days that he trips over himself because he cannot feel it (*Id.*, ¶ 44). Moreover, Mackey stated that he still wears a brace on his right ankle frequently (*Id.*, ¶ 45).

On August 9, 2023, Mackey applied for Local Police and Fire Retirement System ("LOPFI") disability benefits (*Id.*, ¶ 46). Mackey had to fill out paperwork describing the extent of his medical history concerning his ankle (*Id.*, ¶ 47). To receive disability benefits from LOPFI, one's disability must be total and permanent. The disability, either physical or mental, must be so severe that "the member is unable to perform his or her previous duty as a LOPFI-covered police officer or firefighter." (*Id.*, ¶ 48). Mackey never got an answer from LOPFI and had to survive, so he did not pursue his claim for LOPFI disability but instead withdrew what he had contributed which amounted to $30,000.00 after taxes (*Id.*, ¶ 49). During Mackey's healing period, that is the time between the date of his surgery on January 6, 2023, until his release by his doctor on August 28, 2023, Mackey received Temporary Total Disability benefits from Workers' Compensation. In

addition, Mackey stated in his deposition that Pine Bluff and PBFES allowed him to use what vacation and sick time he had remaining to make up the difference (*Id.*, ¶ 50).

During his healing period, Mackey taught at the Arkansas Fire Training Academy and ran his own lawn care business on a sit-down riding lawn mower (*Id.*, ¶ 51). According to Dr. Ardoin, Mackey reached "maximal medical improvement" on August 28, 2023; however, Dr. Ardoin did not clear him to return to active firefighting and stated that "[Plaintiff] will be medically retired unable to return to that type of work at this time." (*Id.*, ¶ 52 (quoting Dkt. No. 15-19, at 3)). After receiving this report from Dr. Ardoin, Mackey sought to discuss his return to work with Battalion Chief Pinkins and Howell, but the meeting never took place (Dkt. No. 16, ¶ 53). Mackey never returned to work at PBFES (*Id.*, ¶ 54).

On October 26, 2023, Mackey timely filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination against Pine Bluff and PBFES because of being denied light duty accommodation under the ADA (*Id.*, ¶ 55). According to Howell in his Position Statement to Christopher Mackey EEOC Complaint, Mackey never made a formal request for an accommodation under the ADA; Mackey agrees that this was Howell's statement but denies that this is true (*Id.*, ¶ 56). It was Howell's understanding that Mackey's injury rendered him unable to perform the essential functions of a basic firefighter after he was released from care by his physician (*Id.*, ¶ 57).

On March 6, 2024, Mackey received a notice of dismissal of his charge and a right to sue letter from the EEOC (*Id.*, ¶ 58). In his deposition, Mackey stated that he was contacted by Mary Edwards of the MLWCT who informed him that he could enter into a settlement on his Workers' Compensation claim in which he would be paid $10,000.00, with Pine Bluff offering a $100.00 stipend to resign (*Id.*, ¶ 59). Mackey was informed by the MLWCT that, if he wished to agree to

the settlement, he would have to sign a General Release Agreement and Voluntary Resignation (*Id.*, ¶ 60). The MLWCT requires a voluntary resignation in exchange for separate consideration in every claim that it settles and had adopted that policy prior to Mackey's claim for workers' compensation benefits (*Id.*, ¶ 61).

If Mackey did not want to sign the voluntary resignation agreement, he could have refused to do so, and his workers' compensation claim would not have been settled and would have remained open (*Id.*, ¶ 64). On November 9, 2023, Mackey attended a settlement hearing where Mackey stated that he understood that settling his claim would close it and end his receipt of benefits (*Id.*, ¶ 66). At the same hearing, he was informed by an administrative law judge that he did not have to settle his Workers' Compensation claim and that he could leave it open and continue receiving benefits if he wished (*Id.*, ¶ 67). At the end of the hearing, Mackey stated that he understood his rights and the terms of the settlement (*Id.*, ¶ 68). Mackey accepted the settlement offer and signed the General Release Agreement and Voluntary Resignation following the hearing (*Id.*, ¶ 69).

Such General Release Agreement did not preclude Mackey from pursuing his EEOC failure to accommodate claims (*Id.*, ¶ 70). Such agreement did "irrevocably release and forever discharge [Pine Bluff] from any workers' compensation related matters [. . .] arising out of, or related to [Mackey's] employment, association, or affiliation, or contact of any kind whatsoever with [Pine Bluff] related to workers' compensation." (*Id.*, ¶ 71 (quoting Dkt. No. 15-23, at 1)).

Mackey resigned from PBFES on November 9, 2023 (*Id.*, ¶ 72). After Mackey resigned, another employee, E'Leecia Clark, was offered temporary light duty work (*Id.*, ¶ 73). However, she had received hip replacement surgery and had run out of sick days, so the department offered her a temporary light duty job until her doctor cleared her to return to full duty (*Id.*). Clark was

only on light duty work for four to five days before she was able to return to full duty (*Id.*, ¶ 74). On December 11, 2023, Mackey had a meeting with Pinkins to verify that Mackey had requested permanent light duty work on multiple occasions, specifically the aforementioned EMT instructor training position (*Id.*, ¶ 75).

## II.    Summary Judgment Legal Standard

Summary judgment is appropriate if there is no genuine issue of material fact for trial. *UnitedHealth Grp. Inc. v. Exec. Risk Specialty Ins. Co.*, 870 F.3d 856, 861 (8th Cir. 2017) (citing Fed. R. Civ. P. 56).  Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact such that the movant is entitled to entry of judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "The party requesting summary judgment is 'entitled to judgment as a matter of law,' Fed. R. Civ. P. 56(c), if the non-movant fails 'to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  *Vaughn v. Wallace*, 496 F.3d 908, 910–11 (8th Cir. 2007) (quoting *Sallis v. Univ. of Minn.*, 408 F.3d 470, 474 (8th Cir. 2005)).

"In ruling on a motion for summary judgment '[t]he district court must base the determination regarding the presence or absence of a material issue of factual dispute on evidence that will be admissible at trial.'"  *Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917, 923–24 (8th Cir. 2004) (internal citations omitted).  "'Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.'"  *Johnson Reg'l Med. Ctr. v. Halterman*, 867 F.3d 1013, 1016 (8th Cir. 2017) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  A factual dispute is genuine if the evidence could cause a reasonable factfinder to return a verdict for either party.  *Miner v. Local 373*, 513

F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989) (citation omitted).

Parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008), *cert. denied*, 522 U.S. 1048 (1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted).

### III.    ADA And ACRA Claims

Mackey asserts a failure to accommodate claim under the ADA and ACRA. Pine Bluff argues that it is entitled to summary judgment because Mackey is not a qualified individual under the ADA (Dkt. No. 14). Moreover, Pine Bluff argues that it did not fail to engage in the interactive process because Mackey never made a formal request and because, even if he had made a formal request, he could not have been reasonably accommodated (*Id.*). Mackey argues that he is a qualified individual under the ADA because, in his view, there were uniformed positions within PBFES that did not include firefighting and other physically demanding tasks as essential duties (Dkt. No. 17). Mackey also asserts that Pine Bluff did not engage in the interactive process (*Id.*).

### A.    Alleged Failure To Accommodate

"The ADA prohibits employers from discriminating 'against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge

10

of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'" *Ehlers v. Univ. of Minn.*, 34 F.4th 655, 659 (8th Cir. 2022) (quoting 42 U.S.C. § 12112(a)).  This discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."  42 U.S.C. § 12112(b)(5)(A).  A disability discrimination and failure to accommodate claim brought under the ACRA applies the same standards as the ADA.  *Schaffhauser v. United Parcel Service, Inc.*, 794 F.3d 899, 905 (8th Cir. 2015); *Jackson v. City of Hot Springs*, 751 F.3d 855, 863–64 (8th Cir. 2014).

"To establish a *prima facie* case of disability discrimination, [Mackey] 'must show that he (1) has a disability within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) suffered an adverse employment action as a result of the disability.'" *Goosen v. Minnesota Dep't of Transportation*, 105 F.4th 1034, 1040 (8th Cir. 2024) (quoting *Fenney v. Dakota, Minn. & E. R.R. Co.*, 327 F.3d 707, 711 (8th Cir. 2003)).

### 1.    Qualified Individual Under The ADA

Pine Bluff argues that Mackey is not a qualified individual under the ADA, entitling Pine Bluff to judgment as a matter of law (Dkt. No. 14).

To be a qualified individual under the ADA, "an employee must (1) possess the requisite skill, education, experience, and training for [his] position, and (2) be able to perform the essential job functions, with or without reasonable accommodation."  *Goosen*, 105 F.4th at 1040 (internal quotations omitted).    "An   employee   bears   the   burden   of   proving   that   []he   is   a

11

'qualified individual.'" *Siebrecht v. Mercy Health Services – Iowa Corp.*, 163 F.4th 524, 530 (8th Cir. 2026).

"'An employer has the burden of showing a particular job function is an essential function of the job.'" *Siebrecht*, 163 F.4th at 531 (quoting *Rehrs v. Iams Co.*, 486 F.3d 353, 356 (8th Cir. 2007)). Essential functions are distinguished from marginal functions. *Goosen*, 105 F.4th at 1040. Essential functions are "'the fundamental job duties of the employment position the individual with a disability holds or desires' and vary according to the job." *Id.* (quoting *Minnihan v. Mediacom Commc'ns Corp.*, 779 F.3d 803, 810 (8th Cir. 2015)). An employer's judgment about whether a function is an essential job function "is considered highly probative." *Duello v. Buchanan Cnty. Bd. Sup'rs*, 628 F.3d 968, 972 (8th Cir. 2010). The Eighth Circuit has directed that:

> When determining what constitutes an essential job function, we consider evidence such as: '(1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the incumbent to perform the function; and (5) the current work experience of incumbents in similar jobs.'

*Siebrecht*, 163 F.4th at 531 (quoting *McNeil v. Union Pac. R.R. Co.*, 936 F.3d 786, 789–90 (8th Cir. 2019)). "[A] task may be an essential function even if the employee performs it for only a few minutes each week, and even if other employees are available to perform the task for the disabled employee." *Minnihan*, 779 F.3d at 812.

The parties do not contest whether Mackey possesses the requisite skill, education, experience, and training for his position. The Court agrees that there is no dispute of material fact as to Mackey's skill, education, experience, and training. Accordingly, to determine whether Mackey is a qualified individual, the Court will turn to whether Mackey is capable of performing the essential job functions of an engineer with PBFES, with or without reasonable accommodation

12

a.    **Performance Of Essential Functions Without Reasonable Accommodation**

Pine Bluff argues that Mackey cannot perform the essential functions of the job as an engineer with the PBFES without accommodation (Dkt. No. 14). Mackey all but concedes that he cannot perform the essential functions of the engineer position without accommodation.

The Court finds that there is no dispute of fact as to whether Mackey's disability impedes his capacity to perform the essential functions of an engineer without reasonable accommodation. Pine Bluff and Mackey agree that at least one of the essential functions of an engineer is to serve as a first responder, Haz-mat technician, and EMT (Dkt. No. 16, ¶ 6). It is undisputed that according to Pine Bluff's job description of a basic firefighter some of the essential functions of a firefighter are to fight structure, vehicle, and wild land fires and work on fire prevention efforts at all times (*Id.*, ¶ 2). It is also undisputed that the written job description of an engineer with PBFES contains highly physical functions including standing, walking, crawling, climbing, balancing, occasionally lifting or moving more than 100 pounds, and frequently lifting or moving 50 pounds (*Id.*, ¶ 5). Moreover, Howell of PBFES asserts that every uniformed employee of PBFES must be able to perform the essential functions of a basic firefighter (*Id.*, ¶ 38).

Mackey's right ankle injury and surgery left Mackey without feeling in the right side of his foot, and there are days that he trips over himself because he cannot feel his foot (*Id.*, ¶ 44). Dr. Ardoin, Mackey's doctor, did not and has not cleared Mackey to return to active firefighting (*Id.*, ¶ 52). While there is some dispute about the exact functions that are essential to the engineer position, Mackey's injuries and the lack of medical clearance mean that Mackey cannot return to performing the undisputed essential functions of an engineer with PBFES without accommodation. Thus, the Court concludes that no reasonable factfinder could find that Mackey could perform the essential functions of his engineer position without accommodation. Given this, the Court turns

13

to whether Pine Bluff failed to provide reasonable accommodations to Mackey that would have allowed him to perform the essential functions of the position.

### b. Performance Of Essential Functions With Reasonable Accommodation

Pine Bluff argues that no reasonable accommodation was possible because Mackey could not perform the essential functions of any uniformed position within PBFES, even if reassigned to a new position (Dkt. No. 14). Mackey argues that being moved to the in-house trainer position would have constituted reasonable accommodation and that he could have performed the essential functions of that position (Dkt. No. 17).

Mackey argues that he requested two forms of reasonable accommodation that would have allowed him to perform the essential duties of the position. First, Mackey sought to have the engineer position altered so that it did not include any firefighting functions. Second, Mackey requested reassignment from his engineer position to an assistant trainer position.

A reasonable accommodation may include the reallocation of duties or the reassignment of an employee. *Faidley v. United Parcel Service of America, Inc.*, 889 F.3d 933, 941 (8th Cir. 2018) (citing *Cravens v. Blue Cross & Blue Shield of Kan. City*, 214 F.3d 1011, 1018 (8th Cir. 2000)). However, "an employer need not reallocate or eliminate the essential functions of a job to accommodate a disabled employee." *Dropinski v. Douglas County, Neb.*, 298 F.3d 704, 709–10 (8th Cir. 2002); *see Fjellestad v. Pizza Hut of America, Inc.*, 188 F.3d 944, 950 (8th Cir. 1999). Moreover, "[w]hile reassignment to a vacant position can be a reasonable accommodation under the ADA, it is not necessarily required." *Burchett v. Target Corp.*, 340 F.3d 510, 517 (8th Cir. 2003). "Reassignment is not required of employers in every instance [] and is an accommodation of last resort when the employee cannot be accommodated in his existing position." *Goosen*, 105 F.4th at 1042. "[R]eassignment to another position is a required accommodation only if there is a

vacant position for which the employee is otherwise qualified." *Ehlers*, 34 F.4th at 660. "To establish reassignment as a possible accommodation, an employee 'must make a facial showing that a position is available for which [she] qualifies.'" *Siebrecht*, 163 F.4th at 532 (quoting *Ehlers*, 34 F.4th at 660). "An employee can establish that []he qualifies for an available position by mak[ing] a facial showing that []he satisfied the legitimate prerequisites for an alternative position and would be able to perform the essential functions of that position with or without reasonable accommodations." *Siebrecht*, 163 F.4th at 533 (internal quotations omitted); *see Cravens*, 214 F.3d at 1019.

Mackey's first purported reasonable accommodation fails as a matter of law. The Court finds that Mackey's request to continue as "an engineer but without the firefighting – without having to be inside fighting the fire" is not a request for a reasonable accommodation because that accommodation necessarily eliminates the essential functions of the engineer position (Dkt. No. 15, ¶ 30). *See Dropinski*, 298 F.3d at 709–10 (an employer need not "eliminate the essential functions of a job to accommodate a disabled employee").

Mackey's second purported accommodation also fails. Mackey requested to be moved to a trainer position as an accommodation, but Mackey is incapable of performing the essential functions of a trainer. The undisputed record provides that the job description of a trainer included essential functions that would have required Mackey regularly to walk, climb or balance, stoop, kneel, crouch, crawl, occasionally lift and move items weighing more than 100 pounds (Dkt. No. 16, ¶ 29). Moreover, as a uniformed employee, the assistant trainer would still be responsible for the essential function of basic firefighting, a function that Mackey's injury left him incapable of performing (*Id.*, ¶ 2). That an assistant trainer might only have to perform the functions of basic

15

firefighting rarely does not mean that function is not an essential function. *See Minnihan*, 779 F.3d at 812.

While a reasonable factfinder could conclude that the essential functions of the trainer position varied from an engineer, no reasonable factfinder could conclude on the undisputed record evidence that the assistant trainer position lacked the same physically demanding essential functions that Mackey is incapable of performing. Because there is no genuine dispute of material fact as to whether Mackey could have performed the essential functions of the positions to which he requested to be transferred, no reasonable factfinder could conclude that Mackey was denied a reasonable accommodation.

### 2.      Conclusion:  Failure To Accommodate

On the undisputed record before the Court, no reasonable factfinder could find that Mackey was capable of performing the essential functions of an engineer, assistant trainer, or any other uniformed member of PBFES with or without reasonable accommodation. Accordingly, the Court grants Pine Bluff's motion for summary judgment as to Mackey's ADA and ACRA failure to accommodate claims (Dkt. No. 13).

### B.      Alleged Failure To Engage In The Interactive Process Claims

Mackey argues that Pine Bluff failed to engage in the interactive process with him. Given the Court's determination on Mackey's failure to accommodate claim, the Court finds that Mackey's claim that Pine Bluff failed to engage in the interactive process also fails (*see* Dkt. Nos. 1, ¶¶ 45, 57; 17, at 8–10).

To "'survive summary judgment on a reasonable-accommodation claim by showing that the employer failed to engage in an interactive process[,]'" Mackey must show the following:

> (1) the employer knew about the employee's disability; (2) the employee requested accommodation or assistance for his or her disability; (3) the employer did not make

a good-faith effort to assist the employee in seeking accommodation; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith.

*Siebrecht*, 163 F.4th at 533 (quoting *Ehlers*, 34 F.4th at 660).

As the Court explained, no reasonable factfinder could find that Mackey could perform the essential functions of an engineer, assistant trainer, or any other uniformed member of PBFES with or without reasonable accommodation.  Accordingly, Mackey "has not met [his] burden of showing that [he] could have been reasonably accommodated but for [Pine Bluff's] lack of good-faith effort." *Siebrecht*, 163 F.4th at 533.  Based upon this failure, the Court declines to address PBFS's specific assertion that Mackey did not request reasonable accommodation (Dkt. No. 14, at 8–11).  Even if Mackey requested accommodation and Pine Bluff did not make a good faith effort to assist Mackey, Pine Bluff cannot have violated the ADA because no reasonable factfinder could conclude that Mackey could have been reasonably accommodated.  Accordingly, Pine Bluff's motion for summary judgment as to Mackey's ADA and ACRA failure to engage in the interactive process claims is granted.

### C.   Alleged Disparate Treatment Claims

Mackey further alleges that, in addition to failure to accommodate disability discrimination, he also suffered disparate treatment on the basis of his disability (Dkt. No. 1, ¶¶ 58-59, 72–73).  Mackey did not address the disparate treatment portion of Pine Bluff's motion for summary judgment (Dkt. No. 14).

"If a party alleges a claim of discriminatory disparate treatment, then the traditional burden-shifting framework of *McDonnell Douglas* will apply." *Fenney v. Dakota, Minn. & Eastern R. Co.*, 327 F.3d 707, 711–12 (8th Cir. 2003).  "To survive a motion for summary judgment under this analysis, the employee has 'the initial burden of proving a prima facie case of

17

discrimination.'"  *Lindeman v. St. Luke's Hospital of Kansas City*, 899 F.3d 603, 605 (8th Cir. 2018) (quoting *McNary v. Schreiber Foods, Inc.*, 535 F.3d 765, 768 (8th Cir. 2008)).

The *prima facie* case of discrimination requires a plaintiff to prove:  "(1) [he] has a disability within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) suffered an adverse employment action due to his disability." *Mobley*, 53 F.4th at 456; *see Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1135 (8th Cir. 1999) (en banc).  Once a plaintiff establishes the elements of the *prima facie* case, then the burden shifts to the employer "to articulate a legitimate, nondiscriminatory reason for the adverse employment action."  *EEOC v. Prod. Fabricators, Inc.*, 763 F.3d 963, 969 (8th Cir. 2018).  Finally, "the burden shifts back to the plaintiff to show that the employer's proffered reason is merely a pretext for intentional discrimination." *Lindeman* 899 F.3d  at 606 (citing *Prod. Fabricators*, 763 F.3d at 969).

As previously explained, Mackey cannot establish that he is a qualified individual under the ADA.  Because Mackey cannot establish the *prima facie* case for discrimination, the ADA claim fails.  Pine Bluff has articulated a legitimate, nondiscriminatory reason for the adverse employment action, and Mackey cannot establish pretext for intentional discrimination on this record, given the potential comparators he cites.  For these reasons, Mackey's ADA discrimination claim also fails.  Accordingly, the Court finds that Pine Bluff is entitled to summary judgment as to Mackey's disparate treatment claim.

### IV.    Workers' Compensation Retaliation

The Court's jurisdiction over the case arises under 28 U.S.C. § 1331 because Mackey brings claims under the ADA, a federal law.  When the Court has federal question jurisdiction, it also may exercise supplemental jurisdiction over "claims that are so related to the claims in the action" that form the basis for federal jurisdiction.  28 U.S.C. § 1367.  However, exercising

supplemental jurisdiction is not mandatory; rather, it is discretionary. *Aldridge v. City of St. Louis, Missouri*, 75 F.4th 895, 901 (8th Cir. 2023). "District courts should consider such factors as 'the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims. . . .'" *Id*. (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)).

The Eighth Circuit has observed that "in the usual case where all federal claims are dismissed on a motion for summary judgment, the balance of factors to be considered under the [supplemental] jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Starkey v. Amber Enters., Inc.*, 987 F.3d 758, 765 (8th Cir. 2021) (alteration in original) (internal quotation omitted).

After carefully considering the supplemental jurisdiction factors, the Court declines to exercise supplemental jurisdiction over Mackey's remaining state law claims. Here, the Court has granted summary judgment for Pine Bluff on Mackey's federal law ADA claims and Mackey's coextensive ACRA claims. Those claims are dismissed. Accordingly, the Court finds that judicial economy, convenience, fairness, or comity do not support continuing to exercise supplemental jurisdiction over Mackey's remaining Workers' Compensation retaliation claim. The Court dismisses without prejudice Mackey's Workers' Compensation retaliation claim.

## V.     Conclusion

For these reasons, the Court grants, in part, Pine Bluff's motion for summary judgment (Dkt. No. 13). The Court grants Pine Bluff's motion for summary judgment as to Mackey's ADA and ACRA claims. The Court dismisses Mackey's ADA and ACRA claims with prejudice. The Court declines to exercise supplemental jurisdiction over Mackey's remaining claim and dismisses

19

without prejudice Mackey's state law claims for Workers' Compensation retaliation.  There are no claims left to be tried.

It is so ordered this 31st day of March, 2026.

_____
Kristine G. Baker
Chief United States District Judge